89 F.3d 834
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leslie G. MORAN, Plaintiff-Appellant,
v.
Kenneth McGINNIS; Gary M. Gabry; Veronica A. Madrigal;
Evin L. Fobbs; Joseph P. McCarroll; Margie McNutt; Jesse
Rivers; Stephen Marschke; L. Kathryn Holt; Andrea Morse;
and Ronald E. Gach, Defendants-Appellees.
 No. 95-1330.
 United States Court of Appeals, Sixth Circuit.
 June 5, 1996.
 
 Before: MARTIN, JONES, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Leslie Moran appeals the district court's dismissal under Fed.R.Civ.P. 12(b)(6) of his claim under 42 U.S.C. § 1983 against the Director of the Michigan Department of Corrections and members of the Michigan Parole Board. In his complaint, Moran sought declaratory and injunctive relief, alleging that the defendants had failed to follow former Policy Directive Departmental Wide Application 45.12, "Guidelines for Commutation Recommendations," and that this failure violated his constitutional right to due process under the Fifth and Fourteenth Amendments. Moran claimed that the mandatory language in policy directive 45.12 gave him a protected liberty interest in the application of a "grid score" (which determined the amount of time he must serve before becoming eligible for parole) by limiting the defendant's discretion in determining whether and when Moran would be released on parole. The district court found that directive 45.12 did not alter the defendants ultimate unfettered discretion to recommend whether commutation should be granted in each case, and accordingly dismissed Moran's complaint on the ground that Moran had no cognizable constitutionally protected liberty interest in the length of time he must serve prior to becoming eligible for commutation of his sentence under the Michigan parole procedures. Upon our de novo review of the district court's judgment, we AFFIRM.
 
 
 2
 Prisoners have no general federal constitutional right to parole or a parole hearing. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979); Inmates of Orient Correctional Institute v. Ohio State Adult Parol Auth., 929 F.2d 233, 235 (6th Cir.1991). States may, however, create a protectible liberty interest through the enactment of regulations and procedural rules that limit the discretion of state officials in making parole decisions. See Hewitt v. Helms, 459 U.S. 460, 471-72 (1983); Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Bills v. Henderson, 631 F.2d 1287, 1291 (6th Cir.1980).
 
 
 3
 The Supreme Court's recent pronouncement on the subject in Sandin v. Conner, 115 S.Ct. 2293 (1995), cautions, however, that the "real concerns undergirding the liberty protected by the Due Process Clause [are] ... freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 2300. Commenting on the problem created by its decision in Hewitt, the Court stated further:
 
 
 4
 By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges....
 
 
 5
 * * *
 
 
 6
 Hewitt has produced at least two undesirable effects. First, it creates disincentives for States to codify prison management procedures in the interest of uniform treatment....
 
 
 7
 Second, the Hewitt approach has led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone. In so doing, it has run counter to the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.
 
 
 8
 Id. at 2299. Thus, Sandin teaches that we should be hesitant to find a protected liberty interest in policy directives governing parole or commutation hearings, given that a change in the state's procedures typically will not cause a "significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 2300. This is particularly true where, as here, the governor retains ultimate discretionary authority to order a sentence commutation, and the parole board retains discretionary authority to grant or deny parole.[1]
 
 
 9
 In sum, we do not believe that policy directive 45.12 gave to Moran a liberty interest in a particular sentence commutation or parole procedure. The directive does not constrain the parole board's ultimate discretion to recommend or deny parole or commutation of Moran's sentence. See Sweeton v. Brown, 27 F.3d 1162, 1164-65 (6th Cir.1994) (en banc), cert. denied, 115 S.Ct. 1118 (1995). In Sweeton, we stated that "[s]o long as the parole discretion is broad, as in Michigan, 'the state has not created a constitutionally protected liberty interest' by enacting procedural rules." Id. (quoting Olim v. Wakinekona, 461 U.S. 238, 249 (1983). Accordingly, Moran's claim must fail.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 We note also that Moran may file a request for a sentence commutation at any time, and that the parole board is required to issue a recommendation on his request