Thomas Arthur MIX, Petitioner–
Appellant,

v.

Kenny ROBINSON, Warden,
Respondent–Appellee.

No. 01–2122.

United States Court of Appeals,
Sixth Circuit.

May 22, 2003.

Before DAUGHTREY and GIBBONS, Circuit Judges, and MILLS, District Judge.[*]

GIBBONS, Judge.

Petitioner-appellant Thomas Mix pleaded *nolo contendere* in Michigan state court to a charge of assault with intent to murder, pursuant to a plea agreement providing that he would be sentenced in accord with the Michigan Sentencing Guidelines. He received a life sentence. Mix later attempted to withdraw his plea, arguing that his counsel had misinformed him about the applicable guideline range. The state trial court held an evidentiary hearing on the issue and determined that Mix's plea was valid, After exhausting his remedies in state court, Mix sought federal habeas relief, arguing that his plea was invalid and his counsel was constitutionally ineffective. The district court denied relief. For the following reasons, we affirm.

## I.

The district court summarized the facts of the offense as follows:

Petitioner's conviction arises out of events that occurred during the early morning hours of February 25, 1995. On the evening of February 24, 1995, Petitioner and his live-in girlfriend Paula Caballero spent a number of hours at a local bar. Around 2:30 a.m. on February 25th, they left the bar to return home. As they were driving home, Petitioner and Caballero began arguing. They returned home, went into their apartment and continued arguing. A short time later, Petitioner left the apartment and got into his Chevrolet Blazer. Caballero went outside and climbed into the vehicle to try to convince Petitioner not to leave. She then saw a bottle of gin on the floor of the car and feared that if Petitioner left with it in the car he would drink the whole bottle. She realized they weren't going to reconcile, so she took the bottle of gin, hopped out of the car, and smashed the bottle of gin on the driveway.

Caballero then turned to walk back across the grass toward the apartment's front porch steps. As she was walking to the porch, she heard tires squealing. She turned around and saw the Blazer headed toward her. Caballero was struck by the Blazer, which Petitioner was driving. Petitioner got out of the car, told Caballero he was sorry and that he had not meant to hurt her. He went to a downstairs neighbor and asked him to call 911. Petitioner left the scene before the police arrived. Caballero's neck was broken. She is paralyzed from the chest down.

Mix entered a plea of *nolo contendere* in Berrien County Trial Court in Michigan on March 6, 2000, pursuant to a plea agreement. At his plea proceeding, Mix stated that it was his choice to plead no contest. The state court judge stated, "I advise you, sir, that this is a felony. It carries up to life or any term of years. Do you understand?" Mix responded affirmatively. The agreement provided that the prosecutor would dismiss two supplemental charges and recommend that the court sentence Mix in accord with the Michigan Sentencing Guidelines. Mix stated that he understood that this was the entire plea

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

agreement. He also stated that he understood that he was giving up any claim that the plea was a result of promises or threats that were not disclosed at the plea proceeding. Neither the prosecutor nor Mix's attorney, James Tracey, was aware of any promises, threats, or inducements to plead other than those disclosed on the record. Finding the plea to be "knowing and voluntarily and understandingly offered" and finding a sufficient factual basis for the plea from the Preliminary Examination transcript, the trial court accepted the plea.

Mix was sentenced on March 24, 1997. The court stated that the guidelines range was 180 to 300 months or life. Both Tracey and the prosecutor agreed with that calculation. The court then gave Mix an opportunity to speak. Although he offered a statement, Mix did not dispute the guidelines range or seek to withdraw his plea. The trial court then sentenced him to life imprisonment. Mix had not protested his possible sentence in any way between the plea hearing and sentencing.

Mix moved to withdraw his plea approximately ten months after sentencing, alleging that it was not made knowingly because Tracey had told him that his guidelines range would be eight to twenty years. The trial court held an evidentiary hearing on this motion on February 2, 1998.

At the hearing, Tracey testified that he attempted to compute the sentencing guidelines range before the plea was entered, but that Mix's record was not completed until the presentence investigation report (PSIR) was available. Although either Tracey or Tracey and the prosecutor together came up with an estimate of the guidelines range, Tracey could not recall the estimate. He stated that, "I remember I think the computations that were made were different than what was even-

tually put forth in the presentence reports." Tracey also admitted to telling the prosecutor that he was unsure of the extent of Mix's prior record when he first estimated the guidelines range, because Mix had minimized his record in discussions with Tracey. After the plea was entered, Tracey told Mix that the guidelines sentence might rise to the level of a life sentence. Tracey did not specifically remember discussing the possibility of a life sentence with Mix before the plea was entered.

However, Tracey did review the PSIR, including the actual guidelines range, with Mix after the plea entry and prior to sentencing. The PSIR contained prior convictions that Mix had not recalled when he discussed his record with Tracey. Tracey did not recall Mix being surprised by the guidelines range in the PSIR or asking to withdraw his plea. Although Mix objected to some portions of the PSIR, Tracey did not recall Mix objecting to how the guidelines range was calculated. Tracey also did not recall Mix's having any difficulty understanding the guidelines calculations when they were explained to him.

Mix also testified at the evidentiary hearing. He stated that when Tracey first told him about the plea agreement offer, he said that "8 to 20" years would be the guidelines range. Mix said that Tracey was "pretty firm" on the guidelines range. Mix denied that Tracey explained to him how the guidelines range was calculated. Mix admitted that he saw the PSIR (indicating the guidelines range of 180 to 300 months or life) before sentencing, but stated that he and Tracey never discussed it. He said that "[i]t didn't have any impact because I was just under the assumption that's what the charge carried," not what the sentencing guidelines would be. Mix denied understanding his sentence would be based on the 180 to 300 months or life

range. He acknowledged that the eight-to twenty-year range did not appear anywhere in the PSIR.

Mix also admitted that he did not raise the issue at sentencing, even though he heard Tracey stipulate that the sentencing range was 180 to 300 months or life and the court gave him an opportunity to speak. He stated that he assumed that everyone was aware of the eight-to twenty-year range, and that the life sentence was "a big enough blow" that he could not comprehend it. Mix also testified that he said something to Tracey about the eight-to twenty-year range after sentencing and tried to talk to the judge, but was taken to jail.

After hearing the evidence, the court ruled from the bench. It noted that Tracey had been an attorney for thirteen years in Michigan, and that Mix, because of his prior criminal history, also was familiar with the process of entering a plea. The court found that there was no promise to Mix, by Tracey or anyone else, that the guidelines range for his plea would be within a certain range. Further, the court accepted testimony that, at the time Tracey calculated the eight-to twenty-year estimate, he was not aware of Mix's entire criminal history because Mix had not been able to recall all of his prior convictions. The court stated, "Any incorrect preliminary scoring of the guidelines was based on a mischaracterization of his prior record by Mr. Mix … to his counsel."

The court rejected as false Mix's claims of an alleged promise or understanding that the guidelines range would be eight to twenty years. At the time of the plea, Mix failed to indicate that he had been told anything about a guidelines range of eight to twenty years. Prior to sentencing, Mix had seen the PSIR stating the true guidelines range, but he failed to raise a concern about it either with his attorney or with

the court. Therefore, the court found his assertions at the evidentiary hearing to be "not credible." It also held that Tracey's representation was not constitutionally ineffective, and it denied Mix's motion to withdraw the plea.

Mix filed an application for appeal the trial court's decision in the Michigan Court of Appeals, which denied leave to appeal for "lack of merit in the grounds presented." He then filed a delayed application for leave to appeal to the Michigan Supreme Court, which denied leave because it was "not persuaded that the questions presented should be reviewed by this court."

On August 27, 1999, Mix filed a *pro se* petition for writ of habeas corpus in the Eastern District of Michigan. On January 19, 2001, present counsel was appointed to represent Mix. On July 20, 2001, the district court denied Mix's habeas petition. It granted a certificate of appealability on August 21, 2001.

## II.

The district court's denial of habeas relief is reviewed *de novo*. The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this case. Under 28 U.S.C. § 2254(d), a federal court should not grant habeas relief unless the adjudication in the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the AEDPA, "a federal habeas court may not issue the writ simply because that court concludes in its indepen-

dent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409., 120 S.Ct. 1495

For habeas purposes, a federal court presumes that state court findings of fact are correct unless clear and convincing evidence is offered to rebut this presumption. 28 U.S.C. § 2254(e)(1); *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998). The appeals court gives complete deference to the federal district court's and state court's findings of fact supported by the evidence. *Clemmons v. Sowders,* 34 F.3d 352, 353 (6th Cir.1994).

### III.

### A. Ineffective Assistance of Counsel Claim

■ Mix's first argument is that he was denied the effective assistance of counsel because Tracey misinformed him as to the consequences of his plea. The state court held an evidentiary hearing on this claim and found that Mix's allegations lacked credibility. Because no evidence has been offered to rebut the presumption of correctness of the state court's factual findings, the state court's holding that Mix's counsel was not ineffective was not objectively unreasonable, and Mix is not entitled to habeas relief on this issue.

The Supreme Court has adopted a two-part test for determining whether a defendant received adequate assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must show that his counsel's performance was deficient, which "requires showing that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The reviewing court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. Second, a defendant must show that counsel's deficient performance prejudiced the defendant. *Id.* at 687, 104 S.Ct. 2052. In order to satisfy the "prejudice" requirement in a plea agreement context, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and "would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Specifically, Mix argues that Tracey was ineffective for failing to obtain Mix's criminal record, which led to his miscalculation and misinforming Mix of the guidelines range. However, the facts in this case do not support Mix's argument that Tracey was constitutionally ineffective. Mix entered a plea with an understanding that he would be sentenced within the guidelines, and neither the judge nor the attorneys specified during the plea proceeding what the guidelines range would be. At the plea proceeding, the judge informed Mix that the offense carried up to a life sentence, and he stated that he understood. Tracey may have miscalculated the guidelines range and instructed Mix that he was subject to an eight- to twenty-year range. However, the state court found that any miscalculation was a result of Mix's mischaracterizing his prior criminal history. While it would have been preferable for Tracey to verify Mix's criminal record, his failure to do so does not fall outside the wide range of reasonable representation. As the Tenth Circuit has stated, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitu-

tionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1994). That is particularly true where, as here, the alleged erroneous calculation was a result of the defendant's own omissions to counsel about his criminal record.

■ In any event, Mix cannot show the second *Strickland* prong of prejudice. In order to show prejudice, Mix must prove that he would have declined the plea agreement if not for Tracey's alleged errors. He has not done so. The record is clear that Tracey reviewed the presentence report, containing the correct guidelines range, with Mix before sentencing. He also testified that he explained the guidelines range to Mix at that time. At no time did Mix indicate that he wished to withdraw his plea. At sentencing, Mix heard the judge state the correct guidelines range, heard his attorney agree, and failed to object when given an opportunity. Mix objected only some ten months after actually receiving the life sentence. Since Mix did not attempt to withdraw the plea after he was clearly on notice of the actual guidelines range, it is unlikely that he would have declined the plea offer if not for Tracey's alleged misstatements.

The state court's holding that Mix failed to demonstrate ineffective assistance of counsel was not an objectively unreasonable application of clearly established law. Mix is not entitled to habeas relief on this claim.

**B. Validity of Plea**

■ Mix's second, related claim is that his plea was invalid because he did not understand its consequences. A plea is constitutionally invalid unless it is accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709,

23 L.Ed.2d 274 (1969). The defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *accord Hart v. Marion Correctional Inst.*, 927 F.2d 256, 257 (6th Cir.1991). The Supreme Court has held that where "the defendant was not fairly apprised of [a plea agreement's] consequences," it can be attacked under the Due Process Clause. *Mabry v. Johnson*, 467 U.S. 504, 508–09, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

As discussed, Mix testified that Tracey told him that the guidelines range would be eight to twenty years while he was deciding whether to accept the plea agreement. However, the trial court explained to Mix at the plea proceeding that the offense "carrie[d] up to life or any term of years." Mix stated that he understood and that no additional promises had been made to him to induce the plea. The trial court then explained the actual sentencing guidelines range to Mix at sentencing, and he failed to object. Mix admitted that he saw the PSIR, that it included the guidelines range of 180 to 300 months or life, and that he had an opportunity to discuss it with his attorney. The state court, after stating on the record that the guidelines range was 180 to 300 months or life, gave Mix an opportunity to speak, and he remained silent. The state court made the following findings:

> The Court does find that Mr. Tracey did discuss the guideline ranges—on reviewing the presentence investigation report. That ... report clearly shows the guideline ranges to be significantly higher than eight to twenty, or the alternative sentence of life. The Court finds as a matter of fact that the Defendant did not raise concern about the guideline ranges at the—at the time that he and Mr. Tracey discussed the presentence investigation report several days before

the actual sentencing in this matter. And, of course, the Defendant did not raise this issue during allocution or otherwise, even after the Court specifically indicated to him-indicated to his counsel and him before proceeding to sentence what the guidelines were as calculated by the Court.

These factual findings are presumed correct under § 2254(e)(1), and they belie Mix's claim that he believed that the plea agreement called for a specific sentence. Therefore, the state court's finding that Mix's plea was valid was not an objectively unreasonable application of Supreme Court authority.

## IV.

For the foregoing reasons, we affirm the district court's denial of habeas relief.