*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LUCIUS CRUMP,

        *Petitioner-Appellant,*

    *v.*

BLAINE C. LAFLER,

        *Respondent-Appellee.*

No. 09-1073

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00820—Robert J. Jonker, District Judge.

Argued: April 28, 2011

Decided and Filed: September 20, 2011

Before: COLE and GIBBONS, Circuit Judges; CLELAND, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Jacob R. Loshin, WINSTON & STRAWN LLP, Washington, D.C., for Appellant. Andrea M. Christensen, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Geoffrey P. Eaton, WINSTON & STRAWN LLP, Washington, D.C., for Appellant. Andrea M. Christensen, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

    CLELAND, D. J., delivered the opinion of the court, in which GIBBONS, J., joined. COLE, J. (pp. 18–21), delivered a separate dissenting opinion.

---

    [*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

———————————

**OPINION**

———————————

CLELAND, District Judge.  Petitioner-Appellant Lucius Crump asks us to find that the Michigan law governing parole has created a liberty interest cognizable under the Fourteenth Amendment and enforceable in a federal court through a 28 U.S.C § 2254 petition for a writ of habeas corpus.  Although Michigan may categorize a parole-eligible prisoner as having a "high probability" of release, we find that an actual release determination remains uncertain and subject to a broad grant of discretion to the Parole Board to decide otherwise.  A prisoner in the high-probability class, therefore, has no enforceable claim of entitlement to release. The district court's dismissal of Appellant's petition will be **AFFIRMED**.

## I.  BACKGROUND

In 2001, pursuant to his plea of guilty, Petitioner was convicted of third-degree criminal sexual conduct ("CSC") and sentenced to a term of imprisonment from 3 to 22 ½ years.  Following his arrest on the CSC charge, and while on bond for that charge, he was arrested for possession with intent to deliver cocaine.  He was convicted of that offense as well, and sentenced to a term of 7 to 20 years imprisonment consecutive to the CSC sentence.

Petitioner became eligible for parole in 2008.  The Michigan Parole Board assessed his parole using the Department of Corrections Parole Guidelines.  Using the associated guidelines scoresheet, the Board assigned Petitioner a score of +3, which gives him a status of "high probability of parole."  Nonetheless, on July 15, 2008, after a Parole Board interview, the Board denied Petitioner's application for parole for a period of 18 months.  Notice of the Board's decision was mailed to Petitioner on July 21, 2008.  In the section of the notice entitled "Substantial and Compelling Reasons for Guideline Departure," the Board wrote:

> P is a repeat sex offender. P needs SOT [sex offender therapy] to reduce his risk of recidivism. P took SOT [in a previous incarceration], but that did not help. At PBI [Parole Board Interview], P had no insight, empathy, or remorse. He has not reduced his risk.

(Pet., Dist. Ct. Docket 1, Ex. A at 1.) Additional reasons for the Parole Board's decision are found elsewhere in the notice, in the section entitled "Reasons for the Parole Board Action." (*Id.* at 1-2.) The notice also provided a list of "Recommendations for Corrective Action Which May Facilitate Release." (*Id.* at 2.)

Petitioner contends that the Board's decision was based "almost entirely on a seven-year-old psychological evaluation that was conducted just months after Mr. Crump's incarceration and that therefore did not, and could not, take into account Mr. Crump's current 'risk of recidivism.'" (Pet'r's Opening Br. at 7-8.) Petitioner also argues that the assertion that he needed sex offender therapy to reduce his risk of recidivism is not even consistent with the 2001 psychological evaluation because the evaluation stated only that therapy "may" be "of some benefit." (*Id.* at 8.) Petitioner further contends that it was inconsistent for the Board to stress the importance of sex offender therapy without also recommending that therapy in the list of "Recommendations for Corrective Action."[1] (*Id.*)

On August 28, 2008, Petitioner filed a pro se "Motion to Show Cause" in the United States District Court for the Western District of Michigan, which the court interpreted as a petition for habeas corpus under 28 U.S.C. § 2254. The petition claimed that the Board's decision to deny him parole was not supported by the record evidence and thus constituted a deprivation of liberty without due process of law.

The petition was referred to Magistrate Judge Hugh Brenneman, who issued a Report and Recommendation on September 8, 2008, recommending a summary

---

[1] Although the validity of the Board's reasoning is not an issue directly before us, most, if not all, of Petitioner's stated concerns are not factually accurate. For example, Petitioner argues that the Board's decision was "almost entirely" based on the 2001 evaluation, but the notice lists a variety of bases for its opinion, most notably that *at the Parole Board Interview*, Petitioner demonstrated a lack of insight, empathy, or remorse. Moreover, there is nothing inconsistent about stating that Petitioner "needs" sex offender therapy when the evaluation stated that it "may" be helpful. Finally, contrary to Petitioner's assertion, the notice did list in its "Recommendations" that Petitioner should "obtain screening by psychological staff to determine the appropriateness of group therapy to reduce the risk to society."

dismissal of the petition for failing to raise a meritorious federal claim.**2**  Specifically, the magistrate judge held that in the absence of a state-created entitlement, Petitioner lacked a cognizable liberty interest in parole, and he therefore failed to state a claim.

Petitioner filed objections, which were considered by United States District Judge Robert J. Jonker on December 22, 2008.  Over Petitioner's objections, the district court adopted the recommendation, dismissed the habeas petition, and denied a certificate of appealability.  Petitioner timely appealed, and this court granted a certificate of appealability.

## II.  ANALYSIS

### A.     Standard of Review

In considering a district court's denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254, we review all legal conclusions de novo. *Tolliver v. Sheets*, 594 F.3d 900, 915 (6th Cir. 2010) (citing *Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir. 2004)).  Generally, the district court cannot grant a petition under § 2254 "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).   Here, however, Petitioner's claim has not been adjudicated in state court, and we thus apply de novo review.

---

**2**The rules governing § 2254 cases provide that the court shall promptly examine a petition to determine "if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief."  Rules Governing § 2254, Rule 4.  If the court determines that the petitioner is not entitled to relief, the court shall summarily dismiss the petition. *McFarland v. Scott*, 512 U.S. 849, 856 (1994)  ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face . . . .").

**B.      Discussion**

The Fourteenth Amendment to the United States Constitution provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   The right to procedural due process "requires that when a State seeks to terminate [a protected] interest . . . it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." *Bd. of Regents v. Roth*, 408 U.S. 564, 570 n.7 (1972) (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971) (alteration in original)).   "Not every injury or substantial deprivation inflicted upon a person by the state 'is sufficient to invoke the procedural protections of the Due Process Clause.'" *Mayes v. Trammell*, 751 F.2d 175, 177 (6th Cir. 1984), *superseded by rule* (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).   In order to have a protected interest, Petitioner "clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. This, precisely, is Petitioner's claim.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).   "A state may . . . establish a parole system, but it has no duty to do so." *Id.*   "That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained." *Id.* at 11 (citing *Roth*, 408 U.S. at 577).   Such a "general interest . . . is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process." *Id.* (citing *Meachum,* 427 U.S. at 225).   Rather, to obtain a constitutionally protected liberty interest in parole, Petitioner must have a "legitimate claim of entitlement to" parole, a claim that can be created only by the operation of state law. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991) (quoting *Greenholtz*, 442 U.S. at 7).   "The federal constitution protects such claims, but does not create them." *Id.*

In *Greenholtz*, the Supreme Court reviewed Nebraska's parole statutory scheme and found that "the expectancy of release provided in this statute is entitled to some measure of constitutional protection." 442 U.S. at 12. In so holding, the Court "emphasize[d] that this statute has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis." *Id.* The "unique structure" to which the court referred is formulated as "shall release . . . unless . . . [specific conditions are met]." Specifically, the Nebraska statute stated:

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall order his release unless* it is of the opinion that his release should be deferred because:
>
> (a) There is a substantial risk that he will not conform to the conditions of parole;
>
> (b) His release would depreciate the seriousness of his crime or promote disrespect for law;
>
> (c) His release would have a substantially adverse effect on institutional discipline; or
>
> (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

*Id.* at 11 (quoting Neb. Rev. Stat. § 83-1, 114(1) (1976) (emphasis added)). The statute also provided "a list of 14 explicit factors and one catchall factor that the Board [wa]s obligated to consider in reaching a decision." *Id.* at 11 n.5 (citing Neb. Rev. Stat. §§ 83-1,114(2)(a)-(n) (1976)). In a later decision commenting on *Greenholtz*, the Court explained that "[i]n deciding that this statute created a constitutionally protected liberty interest, the Court found significant its mandatory language—the use of the word 'shall'—and the presumption created—that parole release must be granted unless one of four designated justifications for deferral is found." *Bd. of Pardons v. Allen*, 482 U.S. 369, 374 (1987).

Likewise, in *Allen*, the Supreme Court considered Montana's parole statute, and found that it, too, created a liberty interest in parole. 482 U.S. 369. The Montana statute used the same kind of mandatory language, but the formulation was reversed. Instead of saying the parole board shall release . . . *unless* certain (negative) factors were present, the Montana statute provided that the parole board shall release . . . *if* certain (positive) factors were present.[3] Specifically, the statute provided,

> Prisoners eligible for parole. (1) Subject to the following restrictions, the board *shall* release on parole . . . any person confined in the Montana state prison or the women's correction center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community[.]
> . . .
> (2) A parole shall be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.

*Id.* at 376-77 (citing Mont. Code Ann. § 46-23-201 (1985)) (emphasis in original). The Court explained:

> Significantly, the Montana statute, like the Nebraska statute, uses mandatory language ("shall") to "creat[e] a presumption that parole release will be granted" when the designated findings are made. *Greenholtz*, 442 U.S., at 12, 99 S. Ct., at 2106. *See* Statement of Assistant Attorney General of Montana, Tr. of Oral Arg. 6 ("under our statute once the Board of Pardons determines that the facts underlying a particular parole application are such that the release can occur consistently with the three criteria the statute specifies, then under our law the Board is required to order release"). We reject the argument that a statute that mandates release "unless" certain findings are made is different from a statute that mandates release "if," "when," or "subject to" such findings being made. Any such statute "creates a presumption

---

[3] This court commented on the language structure of the Nebraska statute in *Mayes*, issued between *Greenholtz* and *Allen*:

> One of the "unique" aspects of the Nebraska statute may be found in its direction that the parole board "shall" order release "unless" certain deferral criteria were present. That the "shall/unless" formulation is important is supported by numerous cases. Furthermore, the few statutes that have been held to establish a liberty entitlement are quite similar to the Nebraska scheme reviewed in *Greenholtz*.

*Mayes*, 751 F.2d at 177 (internal citations omitted).

> that parole release will be granted." *Greenholtz*, supra, at 12, 99 S. Ct., at 2106.

*Id.* at 377-78.

Accordingly, in determining whether Michigan's parole system creates a liberty interest, we must determine whether Petitioner had "a legitimate claim of entitlement to" parole, rather than "an abstract need or desire for it." *Greenholtz*, 442 U.S. at 7 (quoting *Roth*, 408 U.S. at 577). The question cannot be answered simply by quantifying the discretion vested with Michigan's Parole Board. Even the statutes at issue in *Greenholtz* and *Allen* vested "very broad" discretion in the parole boards. *Greenholtz*, 442 U.S. at 13; *Allen*, 482 U.S. at 381. As explained in *Allen*, referring to *Greenholtz*:

> In essence, the Court made a distinction between two entirely distinct uses of the term discretion. In one sense of the word, an official has discretion when he or she "is simply not bound by standards set by the authority in question." R. Dworkin, Taking Rights Seriously 32 (1977). In this sense, officials who have been told to parole whomever they wish have discretion. In *Greenholtz*, the Court determined that a scheme awarding officials this type of discretion does not create a liberty interest in parole release. But the term discretion may instead signify that "an official must use judgment in applying the standards set him [or her] by authority"; in other words, an official has discretion when the standards set by a statutory or regulatory scheme "cannot be applied mechanically." *Dworkin*, supra, at 31, 32; *see also id.*, at 69 ("[W]e say that a man has discretion if his duty is defined by standards that reasonable [people] can interpret in different ways"). The Court determined in *Greenholtz* that the presence of official discretion in this sense is not incompatible with the existence of a liberty interest in parole release when release is *required* after the Board determines (in its broad discretion) that the necessary prerequisites exist.

*Allen*, 482 U.S. at 375-76 (emphasis in original). Rather, *Allen* and *Greenholtz* teach that the salient factor is whether the statute contains mandatory language that creates a presumption of release when the designated findings are made. *Id.* at 377 (quoting *Greenholtz*, 442 U.S. at 12). The mandatory language may be found in a statute, a regulation, or even "policy statements . . . or other official promulgations" by parole or

prison officials.  *See Beard v. Livesay*, 798 F.2d 874, 877 (6th Cir. 1986) (citing *Walker v. Hughes*, 558 F.2d 1247, 1255 (6th Cir. 1977)).

Respondent argues that the Sixth Circuit has already held, in *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) (en banc), that Michigan's parole system does not create a liberty interest in parole.  In *Sweeton*, we reviewed the district court's denial of a motion to "vacate, modify or terminate a consent decree entered in 1981 governing parole procedures for state prisoners in Michigan."  *Id.* at 1162.  We said:

> The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole.  So long as the parole discretion is broad, as in Michigan, "the State has not created a constitutionally protected liberty interest" by enacting procedural rules.  *Olim*, 461 U.S. at 249, 103 S. Ct. at 1747.  The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole as amplified in the consent decree as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such procedural rules as a matter of *federal* due process.

*Id.* at 1164-65 (emphasis in original).[4]  Since *Sweeton*, as Petitioner acknowledges, courts have routinely held that Michigan has not created a liberty interest in parole. *Sweeton*'s apparently continued vitality was the basis for the Magistrate Judge's recommendation, ultimately accepted, that the district court dismiss Petitioner's § 2254 petition:

> In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has

---

[4]In *Sweeton*, we commented:

> A due respect for the doctrine of federalism, the structural principle by which we subdivide governmental power, discourages constitutionalizing state regulatory procedures.  Otherwise federal courts would take over from state administrators and courts the interpretation and enforcement of a whole host of local procedural rules governing such local matters as zoning, probate, licensing, school discipline or public health, and states would be discouraged from laying down reasonable and useful rules to govern the conduct of their own affairs for fear that those rules would subject them to jurisdiction and penalties in federal courts.

*Sweeton*, 27 F.3d at 1165.

recognized the continuing validity of Sweeton and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

(Report and Recommendation, Dist. Ct. Docket 2, at 3-4.)

While this host of decisions favorably citing *Sweeton* may appear dispositive, Petitioner's argument to the contrary is substantial. After *Sweeton* was issued, the Michigan parole system was amended to limit, in some degree, the Parole Board's discretion. *See In re Parole of Johnson*, 556 N.W.2d 899, 900 (Mich. Ct. App. 1996) ("While the Parole Board continues to enjoy broad discretion in carrying out its legislatively prescribed function, the Legislature's recent enactments have circumscribed this discretion to some extent.") (citations omitted). In the intervening fifteen years since these statutory and regulatory amendments took effect, no published Sixth Circuit case has addressed whether *Sweeton*'s ruling survives the amendments: whether, in other

words, the particular provision cited by Petitioner creates a legitimate expectation of parole and thus a liberty interest.[5]

Petitioner focuses not on the parole statute generally, but on one particular provision that classifies certain prisoners as having either a "low" or "high probability of parole." *See* Mich. Comp. Laws § 791.233e(6) (2011). Once so classified, the statute provides that the Board shall depart from the classification only for "substantial and compelling reasons." *Id.* The starting point of statutory analysis, of course, is the text of the statute itself. *See McNeill v. United States,* ___ U.S. ___, 131 S.Ct. 2218, 2221 (2011) ("As in all statutory construction cases, we begin with 'the language itself [and] the specific context in which that language is used.'"(quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (alteration in original))). The statute reposes in the Parole Board trust and broad—although in some ways circumscribed—discretion in its determinations. *See* Mich. Comp. Laws § 791.235 (2011) ("The release of a prisoner on parole shall be granted solely upon the initiative of the [P]arole [B]oard."). For example, the statute provides that "[t]he department shall develop parole guidelines that are consistent with section 33(1)(a) and that shall govern the exercise of the [P]arole [B]oard's discretion pursuant to sections 34 and 35 as to the release of prisoners on parole under this act." Mich. Comp. Laws § 791.233e(1) (2011). Parole guidelines attach different probability scores to potential parolees. *See* Mich. Admin. Code r. 791.7715-7716 (2011) (prescribing the factors to take into consideration in generating a "score" which in turn assigns each parolee a "probability of parole"). "The purpose of the parole guidelines shall be to assist the [P]arole [B]oard in making release decisions that enhance the public safety." Mich. Comp. Laws § 791.233e(1). The statute further provides:

---

[5]As will be discussed below, an unpublished case does address the issue, albeit briefly. Further, a recent published case, citing *Sweeton*, states that a district court "properly dismissed on the ground that plaintiffs lack a constitutionally protected liberty interest in parole." *Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010). In *Foster*, however, the issue was not directly before the court because it had not been raised on appeal. *See id.* ("The complaint does not state a claim under any of these theories. First, considered as a claim under general procedural due process principles with regard to the denial of parole, the district court properly dismissed on the ground that plaintiffs lack a constitutionally protected liberty interest in parole. Plaintiffs do not contest this, but rather argue that this is not the nature of their claim." (citations omitted)).

The department shall promulgate rules pursuant to the administrative procedures . . . which shall prescribe the parole guidelines. . . . Until the rules take effect, the director shall require that the parole guidelines be considered by the [P]arole [B]oard in making release decisions. After the rules take effect, the director shall require that the [P]arole [B]oard follow the parole guidelines.

Mich. Comp. Laws § 791.233e(5) (2011). The specific section applicable to Petitioner states:

(6) The [P]arole [B]oard may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. *A departure under this subsection shall be for substantial and compelling reasons stated in writing*. The [P]arole [B]oard shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.

Mich Comp. Laws § 791.233e(6) (2011) (emphasis added); *see also* Mich. Admin. Code r. 791.7715(5). Petitioner relies on this to argue that the language of the Michigan parole statute is akin to that in *Allen* and *Greenholtz*, in that parole must be granted to a classification of prisoners unless "substantial and compelling reasons" exist.

Petitioner also cites *Mayes v. Trammell*, in which we found that Tennessee's former parole scheme created a liberty interest. 751 F.2d 175 (6th Cir. 1984). There the parole rules provided that the "Board *may* deny the resident's release on parole *if*, by majority vote, it determines" one of four enumerated factors existed. *Id.* at 178 (citing Tenn. Bd. of Parole Rule 1100-1-1-.06(3)). Unlike Michigan's parole system, however, the Tennessee system provided that "[t]he Board operates under the presumption that each resident who is eligible for parole is a worthy candidate and thus the Board presumes that he will be released on parole when he is first eligible." *Id.* (citing Tenn. Bd. of Parole Rule 1100-1-1-.06(1)). Thus, although the Tennessee rule used "may" instead of "shall," it nonetheless incorporated an explicit presumption which gave rise to a enforceable expectation of release, and we specifically relied on that presumption

when finding a liberty interest. *Id.* at 178. Michigan's statue embraces no such presumption.

A most striking difference between the Michigan parole system and those discussed in *Allen*, *Greenholtz*, and *Mayes* is that the Michigan parole statute provides an expectation of release to only a certain classification of prisoners. That classification, in turn, is determined by a computation of the Parole Board using a variety of factors. *See* Mich. Admin. Code. r. 791.7716(3) (2011) ("A parole guideline score shall be based on a combination of the length of time the prisoner has been incarcerated for the offense for which parole is being considered and each of the following factors [listing numerous factors]."). Therefore, only certain prisoners, classified after the Parole Board has performed its calculation of the guideline score, could potentially have a liberty interest in parole. The classification is not discernable from a casual reading of the parole statute.[6] Petitioner provides no case in which a liberty interest inheres in a subset of prisoners who are not readily identifiable, as opposed to prisoners generally as in *Mayes*.

A second difference between the Michigan statute and the statutes in *Allen* and *Greenholtz* is the degree of specificity provided in the statute for the predicate exceptions. Accepting Petitioner's argument that the Board can depart from the "high probability of parole" only for substantial and compelling reasons, such a broad, and undefined,[7] expression of the factual predicate necessarily vests greater discretion in the

---

[6]The rules for calculating the score list seven broad considerations with numerous subsections included under most of the broad considerations. *See* Mich. Admin. Code. r. 791.7716(3). Most of the considerations seem objective (e.g., under the broad category of "nature of offenses," the Board is directed to consider such factors as the use of a weapon or threat of a weapon in the underlying offense, any physical or psychological injury to a victim, and property damage of more than $5,000.00). *See* Mich. Admin. Code. r. 791.7716(3)(a)(i-iii) (2011). But other factors appear more subjective (e.g., provision requiring consideration of "the prisoner's performance in institution programs and community programs during the period between the date of initial confinement on the sentence for which parole is available and parole eligibility, including, but not limited to, participation in work, school, and therapeutic programs," and provision requiring consideration of the prisoner's mental health, including "[w]hether subsequent behavior or therapy suggests that improvement has occurred"). *See* Mich. Admin. Code. r. 791.7716(3)(f), (g)(iv) (2011).

[7]Citing *People v. Babcock*, 666 N.W.2d 231, 237 (Mich. 2003), Petitioner asserts that, under Michigan law, the phrase "substantial and compelling reason" has "acquired a peculiar and appropriate meaning." In *Babcock*, the Michigan Supreme Court, reviewing sentencing guidelines, stated:

> The phrase "substantial and compelling reason" has, in our judgment, acquired a peculiar and appropriate meaning in the law and, thus, it must be construed according to such meaning. That is, a "substantial and compelling reason" must be construed to

Board than those in *Allen* and *Greenholtz*.   In *Allen*, the Court discussed the type of discretion exercised in both the Montana and Nebraska statutes, and concluded that, under the relevant "shall . . . when/unless" language structures, both statutes required determining whether similar factual predicates were met:

> Moreover, the "substantive predicates," see *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S. Ct. 864, 871, 74 L.Ed.2d 675 (1983), of parole release in Montana are similar to those in Nebraska.  In both States, the Parole Board must assess the impact of release on both the prisoner and the community.  A central concern of each is the prisoner's ability "to lead a law-abiding life."   Neb. Rev. Stat. § 83-1,114(1)(d) (1981); see § 83-1,114(1)(a) (prisoner may not be released if there is "a substantial risk that he will not conform to the conditions of parole"); Mont. Code Ann. § 46-23-201(2) (1985) (prisoner *must* be released when, *inter alia*, it will cause no detriment to him or her and *must not* be released unless the prisoner is "able and willing to fulfill the obligations of a law-abiding citizen").  An interrelated concern of both statutes is whether the release can be achieved without "detriment to . . . the community." Mont. Code Ann. § 46-23-201(1) (1985); see § 46-23-201(2) (prisoner must be released only "for the best interests of society"); see Neb. Rev. Stat. § 83-1, 114(1)(b) (1981) (prisoner must not be released if it "would depreciate the seriousness of his crime or promote disrespect for law").  The discretion left with the parole boards is equivalent in Montana and Nebraska.

*Allen*, 482 U.S. at 379-80.   In Michigan, the discretion left to the Parole Board is markedly greater, as the predicate consideration ("substantial and compelling reasons stated in writing") is far less particularized than the significant considerations in *Allen* and *Greenholtz*, comprising a list of specifically enumerated factors. Michigan's law provides that so long as the reasons meet the standards (and avoid the statutory proscriptions) they need not be anything in particular to suffice.

---

mean an "objective and verifiable" reason that "'keenly' or 'irresistibly' grabs our attention"; is "of 'considerable worth' in deciding the length of a sentence"; and "exists only in exceptional cases."

*Id.* (citing *People v. Fields*, 528 N.W.2d 176 (1995)).  Even if it is true that "substantial and compelling reasons" in the parole scheme means the same as in the sentencing scheme, the phrase, nonetheless, does not provide further specificity with respect to the *types* of reasons on which the Parole Board may rely. In *Allen* and *Greenholtz*, the statutes provided specific, enumerated factors, while in Michigan what constitutes a "substantial and compelling reason" is left to the broad discretion of the Parole Board.

Finally, and obviously, the classification into which each prisoner is placed is a "probability." While Petitioner may have been classified as a "high probability of parole," a *probability* does not equal a presumption. As defined by the *Oxford English Dictionary*, probability means "[t]he property or fact of being probable, esp. of being uncertain but more likely than not." Oxford English Dictionary (3d ed. 2007). Everyday parlance is quite consistent with this definition: "probability" lies at some distance from certainty. Neither can a probability, incorporating as it does that degree of uncertainty, rise to the significance of a mandated result, or a presumption. Even if a grant of parole were viewed as "more likely than not" to occur, the outcome nonetheless remains "uncertain," and therefore "more likely than not" cannot create a presumption's "entitlement" to that result; there can be no legitimate expectation or entitlement properly founded on the basis of an event the occurrence of which is merely "likely." *See Bd. of Regents*, 408 U.S. at 577. A gambler who managed to get even odds betting on the USSR hockey team against the US in the 1980 Winter Olympics was far "more likely than not" going to win. He was probably planning how he would spend his loot even before the first puck dropped. But uncertainty intervened, the US happily prevailed, and the gambler never saw a dime.

We find that Michigan's 1996 amendments did not affect the holding in *Sweeton*. There is no "legitimate claim of entitlement to" parole, *Greenholtz*, 442 U.S. at 7 (citing *Roth*, 408 U.S. at 577), and thus no liberty interest in parole.

This finding is also consistent with two unpublished Sixth Circuit decisions which have addressed the issue, although briefly. In *Caldwell v. McNutt,* 158 F. App'x 739 (6th Cir. 2006), the panel found that the amendments to the parole procedures did not impact *Sweeton*'s holding:

> Michigan law, which imbues the Parole Board with broad discretion, does not create a liberty interest in the granting of parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc). (Though Michigan's statutes governing parole procedures have been amended in minor ways since *Sweeton*, the legislature has made no alterations that would change the result in that case. *See* Mich. Comp. Laws §§ 791.234-.235.) Therefore, even if the Parole Board relied on

inaccurate information to deny Caldwell parole, it did not violate any
liberty interest protected by the United States Constitution.

*Id.* at 740-41.  A second panel examined the language to which Petitioner cites and held:

The district court properly concluded that the Michigan parole scheme
does not create a protected liberty interest.  In support of their claim, the
plaintiffs argued that the current Michigan parole scheme creates a
protected liberty interest in parole because it places severe restrictions on
the Board's discretion to grant or deny parole, and because it requires the
Board to provide "substantial and compelling reasons" for departing from
the parole guidelines. Prisoners have "no constitutional or inherent right"
to parole or a parole hearing.  *Greenholtz v. Inmates of Neb. Penal &
Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L.Ed.2d 668 (1979).
Michigan law provides that "[t]he release of a prisoner on parole shall be
granted solely upon the initiative of the parole board."  Mich. Comp.
Laws Ann. § 791.2359(1)(a) (West Group 2002).  Contrary to the
plaintiffs' argument, the ultimate authority to grant parole still lies within
the discretion of the Board. Hence, the Michigan parole scheme does not
create a protected liberty interest in release on parole.

*Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  Unpublished decisions in the
Sixth Circuit are, of course, not binding precedent on subsequent panels, *see Sheets v.
Moore*, 97 F.3d 164, 167 (6th Cir. 1996) (Stating that unpublished opinions "carry no
precedential weight . . . [and] have no binding effect on anyone other than the parties to
the action."), but their reasoning may be "instructive" or helpful. *See Combs v. Int'l Ins.
Co.* 354 F.3d 568, 593 (6th Cir. 2004) ("Although *Willits* [*v. Peabody Coal Co.*, 188
F.3d 510, 1999 WL 701916 (6th Cir. Sept. 1, 1999)] is an unpublished opinion, its
reasoning is instructive."); *Boyd v. Yukins,* 99 F. App'x 699, 703 (6th Cir. 2004) ("Our
unpublished case of *Mix v. Robinson,* 64 F. App'x 952, 957-58 (6th Cir. 2003), is
instructive.").  The holdings of *Caldwell* and *Carnes* lend further support to our finding
that Michigan still has not created a liberty interest in parole.

Austrian philosopher Ivan Illich observed, "we must rediscover the distinction
between hope and expectation." Ivan Illich, *Deschooling Society* 105 (1971).  The
maintenance of just this distinction is near-bedrock of Fourteenth Amendment due
process jurisprudence.  Liberty interests do not arise casually from vague or anticipated

hopes. They arise instead from legitimate claims of entitlement.  *Roth*, 408 U.S. at 577. A fair reading of Michigan's parole system reveals that it extends the possibility—even to the extent of being probable—that parole status will be awarded.  "That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained."  *Greenholtz*, 442 U.S. at 11 (citing *Roth*, 408 U.S. at 577).  Though he has identified a basis for his *hope* of parole, Petitioner has failed to identify a protectable liberty interest to which he is *entitled* under the Fourteenth Amendment.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the dismissal of the petition for habeas corpus.

—————————————

**DISSENT**

—————————————

COLE, Circuit Judge, dissenting.  The majority claims that Michigan's parole system does not create a liberty interest because "an actual release determination remains uncertain and subject to a broad grant of discretion."  Slip Op. at 2.  Neither of these considerations changes the fact that, under controlling Supreme Court precedent, *see Bd. of Pardons v. Allen*, 482 U.S. 369 (1987); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979), Michigan's parole system "creates a presumption that parole release will be granted," *Greenholtz*, 442 U.S. at 12, and thus establishes a liberty interest, for prisoners classified with a "high probability of parole."  I would therefore **REVERSE** the district court's judgment.

As an initial matter, I agree with the majority that our only published decision on this issue, *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) (en banc), addressed a different Michigan statutory parole system, which vested more discretion in the parole board.  *See In re Parole of Johnson*, 556 N.W.2d 899, 900 (Mich. Ct. App. 1996).  *Sweeton* thus does not bind us, and its reasoning fails to survive scrutiny in light of Michigan's current system.

As the majority notes, "in all statutory construction cases, we begin with the language itself [and] the specific context in which that language is used."  *McNeill v. United States*, --- U.S. ----, 131 S. Ct. 2218, 2221 (2011) (internal quotation marks omitted).  This analysis focuses on "the ordinary meaning of the term."  *Ransom v. FIA Card Servs.*, --- U.S. ----, 131 S. Ct. 716, 724 (2011).  The relevant Michigan statutory language is:  "The parole board *may* depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines . . . .  A departure under this subsection *shall* be for substantial and compelling reasons stated in writing."  Mich. Comp. Laws § 791.233e(6) (emphasis added).  The parole guidelines standards "shall govern the exercise of the parole board's discretion."  *Id.* § 791.233e(1).

The plain interpretation of this language is that inmates with a "high probability of parole" are presumed to receive parole. *If* the Michigan parole board wants to deny these individuals parole, it has the discretion to do so, but *only* "for substantial and compelling reasons stated in writing."[1] *Id.* § 791.233e(6). Michigan therefore "creates a presumption that parole release will be granted" to inmates with a "high probability of parole," so it creates a liberty interest for these individuals. *See Greenholtz*, 442 U.S. at 12.

After quoting the relevant Michigan statutory language, however, the majority never conducts an assessment of the statute's ordinary meaning—an assessment that compels finding a liberty interest present here. Instead, the majority notes that several factors go into the determination of who receives the "high probability of parole" designation, points out that only a sub-section of parolees receive this designation, and claims that the "substantial and compelling" factual predicate undermines the finding of a liberty interest. Lastly, the majority makes much ado of the difference between a "probability" and a "presumption." Each of the arrows in the majority's quiver misses the mark, and all of them fail to strike at the heart of what the majority acknowledges is the most important element of statutory interpretation: the language of the statute itself.

First, the majority contends that a prisoner's classification depends on "a variety of factors," "[m]ost of [which] seem objective . . . [b]ut other[s of which] appear more subjective." Slip Op. at 13 & n.6. The majority also protests that a prisoner's "classification is not discernable from a casual reading of the parole statute." *Id.* at 13. But the factors relevant to the parole-guidelines classification are no more discretionary (or "subjective") than those relevant to parole that the Supreme Court reviewed in *Greenholtz*. In that case, the Court noted that "the [parole release] decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis

---

[1]Our precedent supports this reading. In *Mayes v. Trammell*, we explained that "regulations['] use [of] the word 'may' . . . is not significant . . . [because] stat[ing] the rule in the negative and thus the use of the word 'may,' as opposed to 'shall,' creates even *more* of an expectation of release." 751 F.2d 175, 178 (6th Cir. 1984) (emphasis in original) (footnote omitted), *superseded by statute as noted by Wells v. Tenn. Bd. of Paroles*, 909 S.W.2d 826, 828 (Tenn. Ct. App. 1995). Also, contrary to the majority's attempt to distinguish *Mayes*, though the Tennessee statutory system contained an additional presumption, the *Mayes* court's separate treatment of that presumption did not alter its conclusion on this point.

of record facts and personal observation filtered through the experience of the decision-maker and leading to a predictive judgment as to what is best both for the individual inmate and for the community." *Greenholtz*, 442 U.S. at 8. Nonetheless, the Court found that Nebraska's parole system created a presumption of release on parole even though the Nebraska statute "require[d] the [parole b]oard to assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice." *Id.*

The Michigan factors relevant to a "high probability of parole" classification are no more discretionary or amorphous: the characteristics of the crime, the prisoner's prior criminal record and mental health, the prisoner's conduct during incarceration, and so on. *See* Mich. Admin. Code r. 791.7716; *see also id.* r. 791.7715. And the fact that Michigan's parole system only gives some inmates a legitimate expectation of parole is of no moment, for parole systems typically segregate inmates into distinct classes, some of whom are eligible for parole (and thus a possible liberty interest) and some of whom are not. *See, e.g.*, Mich. Comp Laws § 791.234. The Montana parole system analyzed in *Allen* did precisely the same thing. *See* Mont. Code Ann. § 46-23-201 (1985). Here, Michigan's statutory scheme simply conducts a further narrowing of the subcategory of inmates possessing a liberty interest through classification of inmates into different categories based on their likelihood of parole. *See* Mich. Admin. Code r. 791.7716. The Court did not find that a statutory delineation of which inmates may be eligible for parole affected the liberty interest in *Allen*, so it cannot affect our analysis here. *See Allen*, 482 U.S. at 376-77 & n.7 (citing Mont. Code Ann. § 46-23-201 (1985)).

Second, the majority attests that "substantial and compelling reasons" is a "broad, and undefined, expression of the factual predicate [which] necessarily vests greater discretion in the [parole b]oard than those in *Allen* and *Greenholtz*." Slip Op. at 13–14. This is not so. The "substantial and compelling reasons" requirement permits no more discretion than the enumerated factors in those cases. *See, e.g.*, *People v. Babcock*, 666 N.W.2d 231, 237 (Mich. 2003); *In re Parole of Johnson*, 556 N.W.2d 899,

902 (Mich. Ct. App. 1996); *Hicks v. Parole Bd.*, No. 224807, 2001 WL 792153, at *3-4 (Mich. Ct. App. Jan. 9, 2001) (per curiam) (assessing "substantial and compelling" in the context of a parolee with a "high probability of parole" using factors identical to those considered in *Allen* and *Greenholtz*). The statutes in *Greenholtz* and *Allen* included such broad considerations as "the best interests of society," and the Nebraska statute in *Greenholtz* included a catch-all additional factor. *See Allen*, 482 U.S. at 376 (citing Mont. Code Ann. § 46-23-201(2) (1985)); *Greenholtz*, 442 U.S. at 11 & n.5 (citing Neb. Rev. Stat. § 83-1,114(2) (1976)). In all of these cases, the statutory schemes contained parole factors that the majority here terms "broad, and undefined." Slip Op. at 13. Yet the point is not the "quantif[ication of] the discretion vested with" a parole board, *id.* at 8, but the determination of "whether the statute contains mandatory language [that] creates a presumption of release when the designated findings are made," *id.* at 9, which—as discussed above—the Michigan parole guidelines do for prisoners with a "high probability of parole."

Finally, the majority erroneously tries to distinguish a "presumption" from a "probability" by equating the former with a "guarantee." A "presumption," however, is merely "an attitude or belief dictated by a *probability*," Merriam-Webster, Webster's Third New International Dictionary 1796 (1993) (emphasis added), or a "legal inference or assumption . . . based on the known or proven existence of some other fact or group of facts," Black's Law Dictionary (9th ed. 2009). *Cf. Greenholtz*, 442 U.S. at 11 (rejecting the notion that a parole scheme that contained a mere "possibility" of parole created a liberty interest).

In sum, because Michigan's parole system "creates a presumption that parole release will be granted" to inmates with a "high probability of parole," *see Greenholtz*, 442 U.S. at 12; Mich. Comp. Laws § 791.233e(6), it creates a liberty interest for these individuals. I respectfully dissent.