Gary S. MAYES, Plaintiff-Appellant,

v.

Nevin C. TRAMMELL, Chairman, Board of Pardons & Paroles, and Members of the Tennessee Parole Board, et al., Defendants-Appellees.

No. 83–5412.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1984.

Decided Dec. 28, 1984.

Susan Kay (argued), Mark S. Anderson, Vanderbilt Law School, Vanderbilt Legal Clinic, Nashville, Tenn., for plaintiff-appellant.

William M. Leech, Atty. Gen. of Tennessee, Wayne E. Uhl, Asst. Atty. Gen. (argued), Nashville, Tenn., for defendants-appellees.

Before: LIVELY, Chief Judge, WELLFORD, Circuit Judge; and ROSENN, Senior Circuit Judge.*

ROSENN, Senior Circuit Judge.

This appeal presents the question of whether Tennessee's parole scheme creates a liberty interest protected by the due process clause. The issue arises in connection with a claim filed pursuant to 42 U.S.C. § 1983. The complaint essentially consists of a challenge to the procedures utilized by the Tennessee Board of Parole at plaintiff's parole hearing and, in connection therewith, alleges a deprivation of liberty without due process of law. The district court dismissed the complaint, holding that the Tennessee statute and rules do not create a liberty interest. We agree as to the statute but not as to the rules. Therefore, we reverse and remand for a determination of whether the plaintiff was denied due process at the parole hearing.

## I.

Plaintiff, Gary S. Mayes, is an inmate serving an indeterminate sentence of 7 to 22 years in the Tennessee Department of Correction. The Tennessee Board of Parole held a parole hearing for the plaintiff on April 28, 1982. At the conclusion of this hearing, it denied the plaintiff parole. Subsequently, he filed a complaint alleging that the hearing was defective because it violated his right to due process of law as is guaranteed by the fourteenth amendment. Specifically, plaintiff alleged that the defendants, members of Tennessee's Board of Parole, (1) denied him access to his file (which contained certain adverse information such as a strong objection to parole by the Knox County District Attorney), (2) did not afford him an opportunity to establish that conditions (in particular a program of psychological treatment) made prerequisite to his parole were arbitrary and constitutionally impermissible, and (3) denied him an opportunity to present evidence in his behalf.

The defendants timely moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The district court granted this motion, holding that Tennessee's parole scheme does not create a liberty entitlement protected by due process. Plaintiff appealed.

* Honorable Max Rosenn, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

## II.

Not every injury or substantial deprivation inflicted upon a person by the state "is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). To have a viable due process claim, a plaintiff must first prove that he was deprived of either life, liberty, or property as protected by the due process clause. *See id.* at 223–24, 96 S.Ct. at 2537–38; *Walker v. Hughes*, 558 F.2d 1247, 1250 (6th Cir.1977). In this case, the plaintiff alleges a violation of his liberty interest, an interest allegedly resulting from an expectation of parole release created by Tennessee law.

■ The mere provision by a state for the *possibility* of parole does not, by itself, create a liberty entitlement protected by the due process clause. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979). Nevertheless, a liberty interest can be created by state law, whether that state law is statutory or in the form of rules and regulations. *See Bills v. Henderson*, 631 F.2d 1287, 1291 (6th Cir.1980); *Walker v. Hughes*, 558 F.2d at 1255. In the *Greenholtz* case, the Supreme Court spoke specifically to the state's creation of a liberty interest in parole and held that a state may, through the wording of its statutes and policies, create such an expectation of parole as to amount to a liberty interest. The protections of the due process clause then attach. 442 U.S. at 11–12, 99 S.Ct. at 2105–2106.

The *Greenholtz* case involved an examination of Nebraska's parole statute. The Court ultimately adopted the view of the respondents there that the statute created a "presumption that parole release will be granted" which "in turn creates a legitimate expectation of release absent the requisite finding that one of the justifications for deferral exists." 442 U.S. at 12, 99 S.Ct. at 2106. Although finding a "protectible [liberty] entitlement," *id.*, the Court emphasized that the Nebraska statute was "unique," and that the laws of other states

should be reviewed on a "case-by-case basis," *id.*

One of the "unique" aspects of the Nebraska statute may be found in its direction that the parole board "shall" order release "unless" certain deferral criteria were present. *Id.* at 11–12, 99 S.Ct. at 2105–2106. That the "shall/unless" formulation is important is supported by numerous cases. *See, e.g., Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 941 (11th Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982); *Bowles v. Tennant*, 613 F.2d 776, 778 (9th Cir.1980); *Boothe v. Hammock*, 605 F.2d 661, 663–64 (2d Cir.1979); *Shirley v. Chestnut*, 603 F.2d 805, 806–07 (10th Cir.1979). Furthermore, the few statutes that have been held to establish a liberty entitlement are quite similar to the Nebraska scheme reviewed in *Greenholtz. See U.S. ex rel. Scott v. Illinois Parole and Pardon Board*, 669 F.2d 1185, 1188 (7th Cir.) ("The Illinois parole release statute ... is practically a mirror image of the Nebraska statute."), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982); *Williams v. Missouri Board of Probation and Parole*, 661 F.2d 697, 699 (8th Cir.1981) ("when/shall" wording), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982).

■ The Tennessee statute under consideration sharply contrasts with the Nebraska statute. The Tennessee statute provides:

> Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is a reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society.

Tenn.Code Ann. § 40–28–117(a). If this were the only language to be considered, there clearly would be no liberty interest under the *Greenholtz* analysis. Not only is

there no "shall/unless" language, but the statute also explicitly points out that parole is a "privilege and not a right." There is, however, other language, in the form of implementing rules adopted by the Parole Board, that must be considered. Rule 1100–1–1–.06 of the Rules of Tennessee Board of Parole provides:

(1) The Board operates under the *presumption* that each resident who is eligible for parole is a worthy candidate and thus the Board presumes that he *will be released* on parole when he is first eligible.

. . . .

(3) After applying the various factors for consideration to the individual resident, the Board *may* deny the resident's release on parole *if*, by majority vote, it determines that:

(a) There is a substantial indication that the resident will not conform to the conditions of his parole;

(b) His release at that time would depreciate the seriousness of the offense or would promote disrespect for the law;

(c) The resident is participating in a program, including but not limited to, a drug or alcohol abuse, vocational or educational program, that could not be continued or substituted with a similar program if such resident was released on parole at that time; or

(d) The medical condition of the resident is such that he could not safely be released on parole at that time or the possible physical harm to the resident from such release would far outweigh his interest in being released on parole.

Tenn.Bd. of Parole Rule 1100–1–1–.06 (emphasis added).

Subsection 1 of the above rule would appear to create the kind of presumption that the Supreme Court found significant in *Greenholtz.* In *Greenholtz,* the Court adopted the view that a liberty interest exists where a statute "creates a presumption that parole release will be granted" which "in turn creates a legitimate expectation of release absent the requisite finding that one of the justifications for deferral exists." 442 U.S. at 12, 99 S.Ct. at 2106. This court has also explicitly recognized the importance of a presumption of release. In *Wagner v. Gilligan,* 609 F.2d 866 (6th Cir. 1979), for example, the court found that a statute did not create a liberty entitlement because "[t]he statute [did] not mandate a presumption of parole release," *id.* at 867.

Subsection 3 of the rule quoted above provides additional support for the finding of a liberty entitlement. It states that "the Board may deny ... release on parole if ... it determines that [any one of four factors is applicable]." This language closely parallels the language of the Illinois statute which the court in *United States ex rel. Scott,* 669 F.2d at 1188, found to create a liberty interest. The Illinois statute provides that "The Board shall not parole a person eligible for parole if it determines that [any one of three factors is applicable]". The court in *United States ex rel. Scott* found that this statute was

practically a mirror image of the Nebraska statute [at issue in *Greenholtz* ] . . . . Instead of directing the Board to release an eligible inmate unless one of the conditions is found, Illinois has simply stated the rule in the negative—the Board shall not release the inmate if one of the conditions is found.

*Id.* This same reasoning is equally applicable to the regulations now before us for review. The only relevant difference between the Tennessee regulations and the Illinois statute is that the Tennessee regulations use the word "may" and the Illinois statute uses the word "shall." This is not significant, however, for both states have "stated the rule in the negative"[1] and thus the use of the word "may," as opposed to "shall," creates even *more* of an expectation of release.

---

1. That is, the regulations or statutes, as the case may be, state that the Board may or shall deny parole if certain things exist, whereas "the rule" (under the Nebraska statute) is that there shall be parole unless certain things exist.

It could be argued that a finding of a liberty entitlement under Tennessee law is improper inasmuch as the state regulations do not contain the classic "shall/unless" language of *Greenholtz.* As noted in *United States ex rel. Scott* and as discussed above, however, a parole scheme like the one in Tennessee really does state the rule, although in the negative. Furthermore, the Court in *Greenholtz* never explicitly required strict adherence to a "shall/unless" benchmark. That the precise operative language of the Nebraska statute is not absolutely necessary to effectuate a "mandatory release" scheme is demonstrated both in *United States ex rel. Scott* and in *Williams v. Missouri Board of Probation and Parole,* 661 F.2d 697, 698–99 (8th Cir.1981) (holding that Missouri parole statute using "when/shall" wording created entitlement protected by due process), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982).

In sum, although the parole statute itself certainly does not create a liberty interest, we hold that the overall Tennessee parole scheme, particularly rule 1100–1–1–.06 of the Rules of Tennessee Board of Parole, does create a liberty entitlement protected by the due process clause. The presence of the decisive language in the Board's rules, rather than in the statute, does not diminish its significance. *See Bills v. Henderson,* 631 F.2d at 1291; *Walker v. Hughes,* 558 F.2d at 1255.

■ Once it is determined that there is a liberty interest, the next step is to determine whether the Parole Board deprived the plaintiff of that entitlement without due process of law. This issue is one that the district court must determine in the first instance. It is worth noting at this juncture, however, that, of the three alleged procedural defects, two—the failure to allow plaintiff to see his file and the requirement that he seek psychological treatment before being released on parole—are not of constitutional dimension. Nearly every federal court that has addressed the issue has held that an inmate has no right to inspect his file or be informed of its contents. *See Slocum v. Georgia State Board of Pardons and Paroles,* 678 F.2d 940, 942 (11th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982); *Schuemann v. Colorado State Board of Adult Parole,* 624 F.2d 172, 175 (10th Cir.1980); *Jackson v. Reese,* 608 F.2d 159, 160 (5th Cir.1979); *Cook v. Whiteside,* 505 F.2d 32, 34 (5th Cir.1974). *Contra Williams v. Missouri Board of Probation and Parole,* 661 F.2d 697, 699–700 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982). And we cannot say that the Parole Board abused its discretion in denying parole on the basis of plaintiff's refusal to seek psychological treatment. As the defendants point out in their brief, they gave plaintiff one year's notice that he would not be released until he had taken advantage of the rehabilitative treatment program available to him. It was not unreasonable for the Board to deny parole upon learning that plaintiff had ignored its recommendation.

■ The third alleged defect, however, has constitutional implications. Plaintiff complains that he was not allowed to present any evidence at his parole hearing. Although *Greenholtz* suggests that a full panoply of adversary procedural rights is not required at a parole hearing, *see* 442 U.S. at 12–14, 99 S.Ct. at 2106–2107, it is unclear whether plaintiff can be stripped entirely of his right to be heard.[2] *Id.* at 14–16.

### III.

The Tennessee parole scheme, by virtue of its "presumption" of parole release and its virtual mirroring of the language of the Nebraska statute at issue in *Greenholtz,* creates such an expectation of parole release as to allow the conclusion that the Tennessee parole rules do indeed create a liberty interest. Accordingly, the judgment of the district court is reversed. The

---

**2.** The record is currently insufficient to determine whether the plaintiff was in fact denied the opportunity to present evidence in his behalf or otherwise to be heard.

case is remanded to the district court with directions to reinstate plaintiff's complaint and for further proceedings consistent with this opinion.